UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re

MACKENZIE R. ALEXANDER,

                        Debtor.
-----------------------------------------------------------------x

PROSCRIPT PHARMACY,

                        Appellant,

        – against –

MACKENZIE R. ALEXANDER,

                        Appellee.

-----------------------------------------------------------------x

**OPINION & ORDER**

No. 25-CV-3296 (CS)

<u>Appearances</u>:

Roland R. Acevedo
Law Office of Roland R. Acevedo
New York, New York

Thomas A. Thompson
Law Office of Thomas A. Thompson
Yarmouth, Maine
*Counsel for Appellant*

Rick S. Cowle
Dylan R. Buchholz
The Law Office of Rick S. Cowle, P.C.
Carmel, New York
*Counsel for Appellee*

Seibel, J.

Before the Court is the appeal of Appellant ProScript Pharmacy ("ProScript") from a March 18, 2025 Order, (Bankr. Dkt. No. 30 (the "March 18 Order" or "Second Contempt Order")),[1] entered by Judge Kyu Young Paek of the United States Bankruptcy Court for the Southern District of New York, in the Chapter 7 bankruptcy proceeding captioned *In re Alexander*, 24-BK-35982 (Bankr. S.D.N.Y.).  The March 18 Order, issued on the motion of Debtor-Appellee Mackenzie R. Alexander ("Debtor"), held ProScript in contempt and awarded Debtor actual damages in the amount of $3,987.00 in attorneys' fees pursuant to the Bankruptcy Court's inherent sanctioning power and 11 U.S.C. § 105(a).

For the following reasons, the Bankruptcy Court's Order is affirmed.

## I.    BACKGROUND

On September 29, 2024, Debtor filed her voluntary Chapter 7 bankruptcy petition, listing ProScript as an unsecured creditor in the amount of $335.00.  (Bankr. Dkt. No. 1 at 27.) Pursuant to 11 U.S.C. § 362(a), the filing of the petition automatically stayed any efforts to collect a claim against Debtor that arose before commencement of the petition.  On September 30, 2024, the Bankruptcy Court generated a Notice of Chapter 7 Bankruptcy Case ("Chapter 7 Notice"), alerting creditors to the automatic stay.  (Bankr. Dkt. No. 4.)  The Bankruptcy Noticing Center sent the Chapter 7 Notice to ProScript by first class mail on October 2, 2024.  (Bankr. Dkt. No. 5.)

On October 3, 2024, ProScript sent an invoice to Debtor in the amount of $335.67. (Bankr. Dkt. No. 7 ("First Contempt Motion") Ex. D.)  On October 11, 2024, counsel for Debtor

---

[1] Citations to "Bankr. Dkt. No." refer to entries on the Bankruptcy Court's docket, No. 24-BK-35982.  Citations to "ECF No." refer to entries on this Court's docket for this case, No. 25-CV-3296.

sent a letter to ProScript warning about the automatic stay and enclosing a copy of the Chapter 7 Notice. (*Id.* Ex. E.) On November 1, 2024, ProScript sent another invoice to Debtor in the same amount. (*Id.* Ex. G.)

On November 18, 2024, Debtor filed a motion for contempt against ProScript pursuant to Federal Rules of Bankruptcy Procedure 9014 and 9020, seeking actual and punitive damages for ProScript's alleged violations of the automatic stay. (First Contempt Motion.) Debtor served the motion on ProScript by first class mail the same day. (Bankr. Dkt. No. 8.) The motion set a return date of December 10, 2024 at 10:00 a.m., (First Contempt Motion at 1), but ProScript did not appear, (Bankr. Dkt. Entry dated Dec. 10, 2024; ECF No. 12). Judge Paek granted the motion at the hearing, (ECF No. 12 at 4:18-6:8), and thereafter memorialized his ruling in a written order dated December 12, 2024, (Bankr. Dkt. No. 12 (the "First Contempt Order")). Under the First Contempt Order, ProScript was required to pay, within twenty days, $2,445.00 in attorneys' fees to Debtor's counsel and $3,000 in punitive damages to Debtor. (First Contempt Order.) Debtor had the First Contempt Order personally served on ProScript's chief of staff on December 30, 2024. (Bankr. Dkt. No. 17 ("Second Contempt Motion") Ex. B.)

On January 28, 2025, after ProScript failed to pay the sanctions ordered in the First Contempt Order, Debtor filed a new motion for contempt against ProScript, seeking actual and punitive damages for ProScript's failure to abide by the First Contempt Order. (Second Contempt Motion.) On February 18, 2025, counsel for ProScript filed a notice of appearance, (Bankr. Dkt. No. 22), and responded to the Second Contempt Motion, (Bankr. Dkt. Nos. 23-24). ProScript argued that the First Contempt Order was a "money judgment" under Federal Rule of Civil Procedure 69, such that Debtor had to seek a writ of execution, rather than contempt sanctions, to enforce it. (Bankr. Dkt. No. 23 ¶¶ 2-7.) ProScript also argued that the First

3

Contempt Order was defective because the Bankruptcy Court did not properly scrutinize the award of attorneys' fees or make the findings necessary to award punitive damages, such that any attempt to enforce the First Contempt Order had to fail.  (*Id.* ¶¶ 8-14.)  Debtor replied on February 21, 2025.  (Bankr. Dkt. No. 27.)

On February 25, 2025, the Bankruptcy Court held a hearing on the motion, at which counsel for both parties appeared.  (Bankr. Dkt. Entry dated Feb. 25, 2025; ECF No. 13.)  Judge Paek rejected ProScript's attempts to relitigate the First Contempt Order and ordered ProScript to pay the sanctions set forth therein.  (ECF No. 13 at 10:20-11:16.)  Judge Paek also directed counsel for Debtor to submit documentation supporting Debtor's request for attorneys' fees relating to the Second Contempt Motion.  (*Id.* at 13:18-14:10.)  On February 28, 2025, counsel for Debtor filed a letter informing the Bankruptcy Court that Debtor had received payment that day from ProScript in satisfaction of the First Contempt Order and attaching a time sheet reflecting counsel's fees for prosecution of the Second Contempt Motion.  (Bankr. Dkt. No. 28.)

On March 18, 2025, the Bankruptcy Court issued a written decision and order granting in part and denying in part the Second Contempt Motion.  (*See* Second Contempt Order.)  As a threshold matter, Judge Paek determined that Debtor could seek enforcement of the First Contempt Order through a new contempt motion, rejecting the argument that the First Contempt Order was a "money judgment" enforceable only by writ of execution.  (*See id.* at 7-13.)  He then found that a finding of civil contempt was justified based on ProScript's failure to comply with the First Contempt Order until after the Second Contempt Motion was filed.  (*See id.* at 13-14.)  Judge Paek then granted Debtor's request for attorneys' fees in the amount of $3,987.00 – the total of 8.6 hours by two attorneys at a rate of $450.00 per hour and 0.6 hours by a legal assistant at a rate of $195.00 per hour – but denied the request for punitive damages on the

ground that the Bankruptcy Court cannot award punitive damages under its inherent sanctioning powers.  (*See id.* at 13-15.)  With respect to the attorneys' fees, Judge Paek found that "the amount of time spent as well as the rate per hour were reasonable given the complexity of the matter and skill of the attorneys."  (*Id.* at 15.)

On March 28, 2025, ProScript filed its Notice of Appeal, labeled on the docket as "Election to Appeal to US District Court *Notice of Appeal*."  (Bankr. Dkt. No. 31.)  At some point thereafter, that document was stricken from the docket, and, on April 6, 2025, a Notice of Appeal was entered, labeled on the docket as "Notice of Appeal."  (Bankr. Dkt. No. 32; *see* Bankr. Dkt. Entry dated Apr. 6, 2025.)[2]  After the April 6 filing, the docket entry for the March 28 filing was modified to include "See Doc #32."  (*See* Bankr. Dkt. Entry dated March 28, 2025.)  The March 28 and April 6 filings are identical, both dated March 28, 2025.  (Bankr. Dkt. Nos. 31-32.)  On April 17, 2025, ProScript filed its Statement of Issues to be Presented and Designation of Items to be Included in the Record on Appeal.  (Bankr. Dkt. Nos. 33-34, 36; ECF No. 2.)

## II.    STANDARD OF REVIEW

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court.  "This Court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further

---

[2] ProScript maintains that the Clerk of the Bankruptcy Court re-docketed the Notice of Appeal on April 6, 2025, (*see* ECF No. 10 ("ProScript's Reply") at 7), whereas Debtor contends that ProScript re-filed the Notice of Appeal itself, (*see* ECF No. 9 ("Debtor's Br.") at 12-13). The dispute does not affect the outcome here.

proceedings." *In re Bernard L. Madoff Inv. Sec., LLC*, No. 15-CV-1151, 2016 WL 183492, at *8 (S.D.N.Y. Jan. 14, 2016), *aff'd*, 697 F. App'x 708 (2d Cir. 2017) (summary order).[3]

"A district court reviews a bankruptcy court's conclusions of law *de novo*, its discretionary decisions for abuse of discretion, and its findings of fact for clear error." *In re Depietto*, No. 20-CV-8043, 2021 WL 3287416, at *4 (S.D.N.Y. Aug. 2, 2021). "On appellate review, this Court may set aside a bankruptcy court's order holding a party in contempt only for abuse of discretion, but such review is more exacting than under the ordinary abuse-of-discretion standard because a bankruptcy court's contempt power is narrowly circumscribed." *In re Blair Ventures, LLC*, 581 B.R. 728, 732 (S.D.N.Y. 2017). A bankruptcy court's award of sanctions is also subject to an "abuse of discretion" standard. *In re Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010). "This means that the Court does not consider whether it would have made the same decision, but merely whether the Bankruptcy Court's decision was reasonable." *Schneorson v. Schneorson*, No. 22-CV-2434, 2023 WL 4490392, at *4 (E.D.N.Y. July 12, 2023). A bankruptcy court's decision amounts to an abuse of discretion where it "(1) rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions, even if it is not necessarily the product of a legal error or a clearly erroneous factual finding." *Miles v. Chase Bank*, No. 20-CV-4748, 2022 WL 842073, at *1 (E.D.N.Y. Jan. 24, 2022). "In reviewing the bankruptcy court's determinations, this Court may rely upon any ground supported by the record – it need not rely solely upon those relied upon by the Bankruptcy Court." *Amelio v. Piazza*, No. 19-CV-5944, 2020 WL 5535241, at *3 (S.D.N.Y. Sept. 15, 2020).

---

[3] Unless otherwise noted, case quotations omit internal quotation marks, citations, alterations and footnotes.

## III.    DISCUSSION

ProScript argues on appeal that the Bankruptcy Court erred in granting Debtor's Second Contempt Motion because the First Contempt Order is defective and therefore ProScript's failure to abide by it could not have formed the basis of a finding of contempt.  (*See* ECF No. 6 ("ProScript's Br.") at 10-15.)  ProScript also contends that the Second Contempt Order is separately defective because (1) the Bankruptcy Court erred in permitting Debtor to enforce the First Contempt Order through a new contempt motion, rather than by a writ of execution; and (2) the Bankruptcy Court did not properly scrutinize the award of attorneys' fees.  (*See id.* at 15-20.) Debtor argues that (1) this appeal is untimely; (2) the Court should not consider ProScript's arguments that the First Contempt Order is defective because ProScript did not appeal the First Contempt Order, and in any event, the First Contempt Order is not defective; (3) the Bankruptcy Court correctly determined that the First Contempt Order is not a money judgment enforceable only by writ of execution; and (4) the Bankruptcy Court did not err in finding ProScript in contempt of the First Contempt Order.  (*See generally* Debtor's Br.)

### A.  Timeliness of Appeal

#### 1.    Rule 8002

Rule 8002(a) of the Federal Rules of Bankruptcy Procedure requires that a notice of appeal "be filed with the bankruptcy clerk within 14 days after the judgment, order, or decree to be appealed is entered."  Fed. R. Bankr. P. 8002(a)(1); *see* 28 U.S.C. § 158(c)(2) (appeals from bankruptcy courts "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules).  "[T]he time limit contained in Rule 8002(a) is jurisdictional, and . . . in the absence of a timely notice of appeal in the district court, the district court is without

jurisdiction to consider the appeal, regardless of whether the appellant can demonstrate 'excusable neglect.'" *In re Siemon*, 421 F.3d 167, 169 (2d Cir. 2005) (*per curiam*); *see In re Mark IV Indus., Inc.*, 558 F. App'x 135, 137 (2d Cir. 2014) (summary order); *Pierre v. Aurora Com. Corp.*, 620 B.R. 210, 215 (S.D.N.Y. 2020).  Debtor argues that ProScript's appeal is untimely because the operative notice of appeal was filed on April 6, 2025, more than fourteen days after Judge Paek issued the Second Contempt Order on March 18, 2025.  (Debtor's Br. at 11-14.)  I disagree.

ProScript timely filed a notice of appeal ("NOA") on March 28, 2025.  (Bankr. Dkt. No. 31.)  The Clerk thereafter struck the March 28 filing, (*see* Bankr. Dkt. Entry dated Mar. 28, 2025) – seemingly because ProScript did not select the proper title for its document on the Bankruptcy Court's Electronic Case Filing ("ECF") System[4] – and an identical document was entered on the docket with the proper title on April 6, 2025,[5] (Bankr. Dkt. No. 32; *see* Bankr. Dkt. Entry dated Apr. 6, 2025).  The docket text for the March 28 filing was modified, apparently on April 21, to include "See Doc #32."  (*See* Bankr. Dkt. Entry dated March 28, 2025.)  The NOAs docketed on March 28 and April 6 are both dated March 28, 2025.  (Bankr.

---

[4] The NOA filed on March 28, 2025 was described in the docket text as "Election to Appeal to US District Court *Notice of Appeal*."  (Bankr. Dkt. No. 31 (italics in original).)  It appears that ProScript's counsel may have chosen "Election to Appeal to US District Court" from a drop-down menu, and then added "*Notice of Appeal*" to make ProScript's intention clear.  The referenced "election" is available in districts (not including this one) where a Bankruptcy Appellate Panel ("BAP") exists, and allows an appellant from a Bankruptcy Court ruling to elect to have the appeal heard by the district court or the BAP.  Usually the NOA and the election are made on the same form, but theoretically one could file the NOA and then make the election separately.

[5] No filing fee was paid along with the March 28, 2025 NOA, but it was paid the same day the April 6 NOA was docketed.  Under Federal Rule of Bankruptcy Procedure 8003(a)(3)(C), the NOA must "be accompanied by the prescribed filing fee," but under Rule 8003(a)(2), "[a]n appellant's failure to take any step other than timely filing a notice of appeal does not affect the appeal's validity, but is ground only for the district court or BAP to act as it considers appropriate, including dismissing the appeal."

Dkt. Nos. 31-32.)  The question then is whether ProScript satisfied Rule 8002(a)'s timeliness requirement with its March 28 filing, even though that filing was ultimately stricken for a filing error.

The Second Circuit addressed a similar issue in *Contino v. United States*, 535 F.3d 124 (2d Cir. 2008), in the context of an appeal from a district court's order.  In *Contino*, petitioner attempted to electronically file a notice of appeal within the time prescribed by Federal Rule of Appellate Procedure 4(a)(1), but it was rejected by the clerk for failure to comply with the local rule that such filings must be submitted on paper.  *See id.* at 126.  Petitioner filed a new notice of appeal on paper well after the deadline had passed.  *See id.*  On a motion to dismiss the appeal, the Second Circuit determined that the notice of appeal was timely filed on the attempted filing date.  *See id.* at 126-27.  Relying on Federal Rule of Civil Procedure 5(d)(4) – which provides that "[t]he clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice" – the Circuit held that "the Federal Rules of Civil Procedure indicate that [petitioner] should not lose his right to appeal because of an error in the form of the notice of appeal."  *Id.* at 127.  The Circuit deemed the notice of appeal to have been filed on the attempted filing date because "there [was] no indication that [petitioner's] failure to submit the notice of appeal on paper was willful and, if the local rule [were] enforced, [petitioner] would lose the right to appeal."  *Id.*

The same principles apply here.  Like the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure provide that "[t]he court clerk must not refuse to accept for filing any document solely because it is not presented in the proper form as required by these rules or by any local rule or practice."  Fed. R. Bankr. P. 8011(a)(3); *see* Fed. R. Bankr. P. 5005(a)(1). The Bankruptcy Rules, like the Rules of Civil Procedure, thus "indicate that [an appellant]

should not lose his right to appeal because of an error in the form of the notice of appeal."

*Contino*, 535 F.3d at 127. ProScript's timely filing was apparently stricken based on a local

practice of the Clerk of Court – to correct an erroneous title for the document on the ECF

System. Moreover, there is no indication that ProScript's error was willful. Accordingly, I

consider ProScript's notice of appeal to have been timely filed on March 28, 2025, and the Court

has jurisdiction over the appeal. *See Becker v. Montgomery*, 532 U.S. 757, 762-68 (2001)

(appellant's failure to comply with Federal Rule of Civil Procedure 11's signature requirement

on initial notice of appeal "not a jurisdictional impediment to pursuit of his appeal" even if error

is not cured until after appeal deadline expires); *In re Parrott*, 118 F.4th 1357, 1362-63 (11th Cir.

2024) ("[T]he bankruptcy court's order striking the first (and timely filed) notice of appeal did

not deprive the district court of jurisdiction" over the appeal where appellants "promptly cured

the signature defect."); *Parks v. Off. of Temp. & Disability Assistance*, 675 F. Supp. 2d 440, 442-

43 (S.D.N.Y. 2009) (considering complaint, filed within statute of limitations but rejected for

failure to comply with clerk's practice that plaintiff select only one basis for jurisdiction, because

complaint was otherwise proper, there was no evidence that plaintiff "willfully failed to comply

with the Clerk's practice," and "[e]nforcing this practice by finding that the Complaint was not

timely filed[] would deprive the plaintiff of a right").

### 2.    Rule 8009

Debtor argues, in the alternative, that the Court should dismiss the appeal under Federal

Rule of Bankruptcy Procedure 8009 for failure to timely file the statement of issues presented

and designation of items to be included in the record. (*See* Debtor's Br. at 15-16.)

Rule 8009(a) of the Federal Rules of Bankruptcy Procedure provides that an appellant

must "file with the bankruptcy clerk a designation of the items to be included in the record on

10

appeal and a statement of the issues to be presented . . . within 14 days after . . . the notice of appeal as of right has become effective under Rule 8002." Fed. R. Bankr. P. 8009(a)(1).  The notice of appeal becomes effective under Rule 8002 when it is docketed in the bankruptcy court. *See In re Aberdeen Enters., Inc.*, No.24-CV-7744, 2025 WL 2550003, at *5 (E.D.N.Y. Sept. 4, 2025); *In re MF Glob. Holdings Ltd.*, No. 17-CV-167, 2017 WL 744603, at *1 (S.D.N.Y. Feb. 23, 2017).  As noted, *see* note 5 above, "Rule 8003(a)(2) authorizes a district court to 'act as it considers appropriate, including dismissing the appeal,' where an appellant 'fails to take any step other than the timely filing of a notice of appeal.'" *In re 199 E. 7th St. LLC*, No. 17-CV-545, 2017 WL 2226592, at *1 (S.D.N.Y. May 19, 2017) (quoting Fed. R. Bankr. P. 8003(a)(2)).

"The Second Circuit has held that 'filing a Designation and Statement is mandatory' and that a late filing should only be accepted if the appellant demonstrates that the 'failure to act was the result of excusable neglect.'" *Fetman v. Musso*, No. 20-CV-1101, 2021 WL 736415, at *6 (E.D.N.Y. Feb. 25, 2021) (quoting *In re Lynch*, 430 F.3d 600, 603 (2d Cir. 2005)); *see* Fed. R. Bankr. P. 9006(b)(1) ("[T]he court may – at any time and for cause – extend the time to act if . . . on motion made after the specified period expires, the failure to act within that period resulted from excusable neglect.").  Therefore, "[i]f a party fails to file a Designation and Statement on time, and an untimely filing is disallowed because no excusable neglect has been shown, the appeal has to be at an end." *In re Lynch*, 430 F.3d at 605.

To determine whether a party has demonstrated "excusable neglect," courts evaluate "all relevant circumstances," including "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394-95

11

(1993); *see In re Ditech Holding Corp.*, No. 24-BK-1106, 2025 WL 783639, at *2 (2d Cir. Mar. 12, 2025) (summary order); *In re Enron Corp.*, 419 F.3d 115, 121-22 (2d Cir. 2005).  The Second Circuit has "taken a hard line in applying the *Pioneer* test."  *In re Enron Corp.*, 419 F.3d at 122.  "This hard line approach focuses primarily on the reason for the delay, and specifically whether the delay was in the reasonable control of the movant."  *In re Residential Cap., LLC.*, No. 12-BK-12020, 2014 WL 1363368, at *2 (Bankr. S.D.N.Y. Apr. 7, 2014); *see Piña v. United States*, No. 20-CV-1371, 2022 WL 782996, at *4 (S.D.N.Y. Mar. 15, 2022) ("The Second Circuit has emphasized . . . that it is the third factor – the reason for the delay – that predominates, and the other three are significant only in close cases.").  "The burden of proving excusable neglect lies with the late-claimant."  *In re Seven Oaks Partners, LP*, 749 F. App'x 67, 68 (2d Cir. 2019) (summary order).

ProScript filed its initial notice of appeal on March 28, 2025.  (Bankr. Dkt. No. 31.)  At some point thereafter, that document was stricken from the docket, seemingly for an improper label, and on April 6, 2025, the operative notice of appeal was docketed.  (Bankr. Dkt. No. 32.)  On April 17, 2025, ProScript filed its Designation and Statement.  (Bankr. Dkt. Nos. 33-34, 36; ECF No. 2.)  ProScript maintains that the fourteen-day deadline for filing its Designation and Statement began to run when the NOA was properly docketed on April 6, 2025, such that its filings on April 17, 2025 were timely under Rule 8009.  (*See* ProScript's Reply at 9-10.)  ProScript argues, in the alternative, that even if the Court determines that it should have filed its Designation and Statement within fourteen days of March 28, 2025, dismissal is not warranted because there is no indication of either bad faith by ProScript or prejudice to Debtor from the delay.  (*See id.*)  Debtor contends that the Court should not allow ProScript to take advantage of the March 28 filing for purposes of filing a timely appeal under Rule 8002 and simultaneously

take advantage of the April 6 filing for purposes of filing a timely Designation and Statement under Rule 8009.  (*See* Debtor's Br. at 15-16.)

As an initial matter, I am not convinced that ProScript's deadline to file the Designation and Statement began to run on March 28, 2025.  Under Rule 8009, the time to file the Designation and Statement is triggered when "the notice of appeal as of right has become effective under Rule 8002."  Fed. R. Bankr. P. 8009(a)(1).  Although ProScript filed its initial notice of appeal on March 28, 2025, the Clerk of Court struck that notice, and it was re-filed with the correct ECF designation on April 6, 2025.  It thus seems that the appeal became effective on April 6, 2025, when the docket entry was corrected and the operative notice of appeal was docketed.  *See Lynn v. Pry*, No. 15-CV-29, 2015 WL 7096637, at \*4-5 (S.D. Ind. Nov. 13, 2015) (where appellant filed deficient notice of appeal and bankruptcy court notified appellant of deficiency and extended deadline to file corrected notice, deadline to file designation and statement likely began to run on filing of corrected notice).[6]

In any event, the circumstances here do not warrant dismissal.  Courts in this Circuit routinely dismiss appeals for an appellant's complete failure to file a Designation or Statement. *See, e.g.*, *In re Aberdeen Enters., Inc.*, 2025 WL 2550003, at \*5 (dismissing appeal where appellant had not filed designation and statement eight months after deadline); *In re Nestor*, No.

---

[6] Debtor contends that it is inconsistent for the Court both to consider the appeal filed on March 28, 2025 and to find that the deadline to file the Designation and Statement did not begin to run until April 6, 2025.  (*See* Debtor's Br. at 16.)  While there is some appeal to this argument, the question of whether a deficient notice of appeal preserves the district court's jurisdiction over the appeal under Rule 8002 is distinct from whether the deficient notice triggers the appellant's filing obligations under Rule 8009.  The Court can decide both that a timely, albeit deficient, notice of appeal preserves the district court's jurisdiction over the appeal – at least, as set forth above, where there is no evidence of willfulness – and that the appeal is not effective until the deficiencies are corrected.  Regardless, I need not definitively decide whether ProScript timely filed its Designation and Statement because, for the reasons set forth below, I find that ProScript has established excusable neglect.

24-CV-7274, 2025 WL 1626440, at *2 (S.D.N.Y. Feb. 3, 2025) (recommending dismissal of appeal where appellant had not filed designation or statement months after deadline), *report and recommendation adopted*, 2025 WL 2081566 (S.D.N.Y. July 24, 2025); *Koch v. Preuss*, No. 19-CV-2830, 2020 WL 1304084, at *3-4 (S.D.N.Y. Mar. 18, 2020) (dismissing appeal where appellant failed to file designation despite multiple notices that his failure would result in dismissal). But here ProScript filed its Designation and Statement. Even assuming that the deadline to file the documents began to run on March 28, 2025, ProScript's filing on April 17, 2025 was at most six days late. Debtor has not shown that the brief delay prejudiced her or prolonged the resolution of this appeal in any way. *Cf. Long Island Minimally Invasive Surgery P.C. v. DiSalvio*, No. 24-CV-6800, 2025 WL 2555975, at *1 n.2 (S.D.N.Y. Sept. 5, 2025) (declining to dismiss appeal where appellant filed brief one day late because "defect is not jurisdictional and does not require automatic dismissal of the appeal").

Moreover, ProScript's failure to file the Designation and Statement within fourteen days of its initial notice of appeal was excusable in light of the fact that the Clerk of Court struck the notice and it was re-docketed it on April 6, 2025. As set forth above, ProScript reasonably could have believed that its obligation to file the Designation and Statement did not begin to run until the filing error was corrected. This case is therefore different from cases where courts have dismissed appeals based on the appellant's failure to comply with a deadline that the court found to be "entirely clear." *In re Lynch*, 430 F.3d at 604 ("Where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test."); *see In re Residential Cap., LLC*, No. 16-CV-8549, 2016 WL 7477558, at *3 (S.D.N.Y. Dec. 28, 2016) ("[B]ecause the deadline for Appellant to file his brief was entirely clear, Appellant cannot show excusable neglect and loses under the *Pioneer* test."). Because the

14

deadline for ProScript to file its Designation and Statement was not entirely clear, and ProScript promptly filed its Designation and Statement after its notice of appeal was corrected, ProScript has demonstrated excusable neglect.

Accordingly, I decline to dismiss the appeal on the ground that ProScript untimely filed its Designation and Statement, and will proceed to the merits.

### B. Merits

#### 1. Whether the First Contempt Order Is a "Money Judgment"

As a threshold matter, ProScript argues that the Bankruptcy Court erred in allowing Debtor to seek enforcement of the First Contempt Order through a new contempt motion. (*See* ProScript's Br. at 15-17.) ProScript contends that the First Contempt Order is a money judgment under Federal Rule of Civil Procedure 69, requiring a writ of execution, rather than contempt sanctions, to enforce. (*See id.*) In the Second Contempt Order, Judge Paek conducted a thorough analysis of the relevant caselaw and concluded that the First Contempt Order was not a money judgment and thus could be enforced through a new contempt motion. (*See* Second Contempt Order at 7-13.) For the reasons set forth below, I agree.

Federal Rule of Civil Procedure 69(a)(1), made applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7069, *see In re BICOM NY, LLC*, No. 17-11906, 2021 WL 4467539, at *1 (Bankr. S.D.N.Y. Sept. 29, 2021), provides that "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise," Fed. R. Civ. P. 69(a)(1). The purpose of the rule is to "'restrict remedies on money judgments to legal process' and to avoid the use of the contempt power or other methods beyond those prescribed by state law 'except in cases where established principles so warrant.'" *Hausler v. BNP Paribas S.A.*, 169 F. Supp. 3d 531, 535 (S.D.N.Y. 2016) (quoting *Hilao v. Estate of Marcos*, 95 F.3d 848, 854-55 (9th

Cir. 1996)); *see Toyo Tire & Rubber Co. v. Hong Kong Tri-Ace Tire Co.*, No. 14-CV-54, 2018 WL 11358738, at *2 (C.D. Cal. Oct. 19, 2018) ("Courts have narrowly construed [Rule 69(a)(1)] to mean that a federal court may not enforce a money judgment by contempt or methods other than a writ of execution.").

Although contempt is not a proper method for enforcing a money judgment, several courts have held, as Judge Paek observed, (*see* Second Contempt Order at 8-9), that "[u]se of the contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment," *Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 166 (7th Cir. 1997); *see, e.g.*, *In re Wallace*, 490 B.R. 898, 907-08 (B.A.P. 9th Cir. 2013) (contempt proceeding proper to enforce sanctions award based on party's willful violation of discharge injunction); *England v. Goodcents Holdings, Inc.*, No. 08-CV-1702, 2009 WL 2835201, at *2 (N.D. Ga. Aug. 31, 2009) (contempt proceeding proper to enforce attorney's fees award based on plaintiffs' unreasonable continuation of litigation after action was mooted); *Loftus v. Se. Pa. Transp. Auth.*, 8 F. Supp. 2d 464, 468 (E.D. Pa. 1998) (contempt proceeding proper to enforce attorney's fees award based on lawyer's prosecution of frivolous lawsuit), *aff'd*, 187 F.3d 626 (3d Cir. 1999).  The court in *Loftus* explained that the distinction between money judgments and sanctions is "warranted in light of public policy":  "While sanctions for misconduct implicate[] the very integrity of the Court's processes, enforcement of a money judgment as between private parties is best left to the . . . mechanisms provided for in the Federal Rules of Civil Procedure." 8 F. Supp. 2d at 468.

Judge Paek correctly found *In re Hernandez*, No. 13-SC-1301, 2014 WL 1345940 (B.A.P. 9th Cir. Apr. 4, 2014), to be instructive.  In that case, the bankruptcy court entered an order under 11 U.S.C. § 362(k) requiring a creditor to pay $3,572.06 in attorney's fees for its

16

willful violation of the automatic stay. *See id.* at *1-3, 7. When the creditor did not pay the amount due under the fee order, the debtor moved to hold the creditor in contempt. *See id.* at *3. The bankruptcy court ordered the creditor to show cause why it should not pay the amount due under the fee order and to pay the attorney's fees incurred by the debtor in seeking compliance with the fee order. *See id.* at *4. On appeal, the creditor argued that the fee order was a money judgment under Rule 69(a), and therefore the bankruptcy court erred in enforcing it through contempt proceedings. *See id.* at *6. The Bankruptcy Appellate Panel rejected that argument, finding that "case law supports the . . . view that when a party's willful failure to comply with an order constitutes misconduct it may be remedied via contempt sanctions." *Id.* at *7. The panel reasoned that because the fee order awarded damages for the creditor's "inappropriate" conduct in violation of the automatic stay, the order could not "fairly be characterized as anything other than a sanction." *Id.* The panel therefore concluded that the fee order could be enforced through contempt proceedings. *Id.* at *6-8.

Here, the First Contempt Order, like the fee order in *Hernandez*, required ProScript to pay attorneys' fees and punitive damages as a sanction for its violation of the automatic stay. (*See* First Contempt Order.) This case is thus analogous to the cases set forth above where courts allowed parties to seek enforcement through contempt proceedings of fees imposed as sanctions for misconduct, and distinguishable from cases where courts found that fee awards imposed for other purposes must be enforced by writ of execution. *See, e.g.*, *Strojnik v. Vill. 1107 Coronado, Inc.*, No. 19-CV-2210, 2021 WL 6064198, at *7-9 (S.D. Cal. Dec. 21, 2021) (attorney's fees awarded under ADA's fee-shifting provision could not be enforced by contempt proceedings); *Amankwah v. Perez*, No. 16-CV-406, 2016 WL 11546540, at *1-2 (W.D. Tex. Nov. 16, 2016) (attorney's fees awarded under 28 U.S.C. § 1447(c) to compensate plaintiffs for costs of

17

opposing removal could not be enforced by contempt proceedings).  I therefore agree with Judge

Paek that the First Contempt Order could be enforced through subsequent contempt proceedings.

As ProScript argues, (*see* ProScript's Br. at 15; ProScript's Reply at 12), and Judge Paek

acknowledged, (*see* Second Contempt Order at 11-13), some courts have held that a sanctions

order under § 362(k) is a money judgment that must be enforced by writ of execution.  But

largely for the reasons set forth by Judge Paek in the Second Contempt Order, I am likewise

unpersuaded by those cases.  For instance, the court in *In re Miller*, No. 12-21402 (Bankr. W.D.

Pa. 2013), determined that an order awarding damages under § 362(k) was a money judgment.

(*See* Memorandum Opinion & Order, *In re Miller*, No. 12-21402 (Bankr. W.D. Pa. Apr. 12,

2013), ECF No. 64 at 2-5.)  But the case on which *Miller* relied to support that proposition, (*see*

*id.* at 3 (citing *In re Am.'s Voice, Inc.*, Nos. 99-2704, 00-6, 2000 WL 33529764 (Bankr. D.D.C.

Oct. 4, 2000)), dealt with fees awarded for purposes other than sanctioning misconduct, *see In re*

*Am.'s Voice, Inc.*, 2000 WL 33529764, at *1-2.  In fact, consistent with the cases I find

persuasive, the court in *In re Am.'s Voice, Inc.* acknowledged in a footnote that "[h]ad the awards

. . . been based on contempt, an argument could be made that attorney's fees incurred in

collecting the contempt damages award should also be compensable as additional damages

arising from contempt."  *See id.* at *1 n.3.  The court in *Miller* neither addressed that footnote nor

otherwise explained why fees awarded for misconduct should be treated the same as fees

awarded for other purposes.

The court in *In re Snorden*, 559 B.R. 857 (Bankr. W.D. Mich. 2016), similarly treated an

order awarding attorneys' fees and punitive damages under § 362(k) as a money judgment,

finding that it had to be enforced by execution.  *See id.* at 861.  But in that case the debtor did not

dispute that the order was a money judgment.  *See id.* at 861 n.5.  The court in *In re Lara*, No.

18

16-50201, 2017 WL 4457436 (Bankr. N.D. Tex. Sept. 6, 2017), likewise concluded that an order awarding attorney's fees and punitive damages under § 362(k) was a money judgment. *See id.* at 3. But the court relied on *In re Snorden* and *In re Am.'s Voice, Inc.* and, for the reasons set forth above, those cases are not persuasive on the issue of whether an award of sanctions for misconduct can be enforced by contempt proceedings.

Ultimately, I agree with the line of cases holding that orders awarding fees as a sanction for misconduct are not money judgments and therefore can be enforced through contempt proceedings. Accordingly, Judge Paek did not err in concluding that Debtor could seek enforcement of the First Contempt Order through the Second Contempt Motion.

### 2.    Finding of Contempt

ProScript argues, in the alternative, that the Bankruptcy Court abused its discretion in finding ProScript in contempt of the First Contempt Order. (*See* ProScript's Br. at 10-15, 18-19.)

"A bankruptcy court's contempt power derives from a court injunction and 11 U.S.C. § 105(a)," which "authorizes issuance of any 'order' that is 'necessary to carry out the provisions of the Bankruptcy Code.'" *In re Gravel*, 6 F.4th 503, 512 (2d Cir. 2021) (quoting 11 U.S.C. § 105(a)). "Contempt may be sought to 'coerce the [non-compliant party] into compliance' with a court order or to 'compensate the complainant for losses' resulting from noncompliance with a court order." *In re Kwok*, 662 B.R. 815, 824 (Bankr. D. Conn. 2023) (quoting *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019)), *aff'd*, No. 23-CV-375, 2024 WL 1492816 (D. Conn. Apr. 5, 2024), *aff'd*, No. 24-BK-1271, 2025 WL 783645 (2d Cir. Mar. 12, 2025). To demonstrate contempt, "a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the

contemnor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *see In re Blair Ventures, LLC*, 581 B.R. at 732.

Under *Taggart*, civil contempt is appropriate only where "there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." 587 U.S. at 557 (emphasis in original). "In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id.* "The standard is an objective one: [a] party's subjective belief that [it] was complying with an order ordinarily will not insulate [it] from civil contempt if that belief was objectively unreasonable." *In re Johns-Manville Corp.*, 666 B.R. 476, 484 (Bankr. S.D.N.Y. 2025).

Judge Paek did not abuse his discretion in finding ProScript in contempt of the First Contempt Order. First, the First Contempt Order clearly and unambiguously required ProScript to pay, within twenty days of the order, $2,445.00 in attorneys' fees to Debtor's counsel and $3,000 in punitive damages to Debtor herself. (*See* First Contempt Order.) Second, it was clear on the record before Judge Paek that ProScript had failed to comply with the First Contempt Order, and had made no attempt (diligent or otherwise) to do so within twenty days. Debtor personally served the First Contempt Order on ProScript's chief of staff on December 30, 2024, (Second Contempt Motion Ex. B), and it was undisputed that ProScript had not paid the sanctions by the time that Debtor filed her Second Contempt Motion on January 28, 2025. Although ProScript, per Judge Paek's order at the hearing on February 25, 2025, (*see* ECF No. 13 at 11:12-16), eventually paid the sanctions mandated by the First Contempt Order on February 28, 2025, (*see* Bankr. Dkt. Nos. 28, 29), Judge Paek did not abuse his discretion in concluding that ProScript could nevertheless be held in contempt for failing to comply with the First Contempt Order by the deadline set forth therein and required to compensate Debtor for the

20

expenses she incurred prosecuting the Second Contempt Motion to compel compliance. *See*

*S&G Labs Haw., LLC v. Graves*, No. 19-CV-310, 2021 WL 4927494, at \*3-4 (D. Haw. Oct. 21,

2021) (holding lawyer in contempt of sanctions order and awarding attorney's fees where lawyer

complied with sanctions order two weeks after deadline); *In re Seaspire, Inc.*, 63 B.R. 44, 46

(Bankr. M.D. Fla. 1986) (holding lawyer in contempt despite "belated payment" of sanctions

because payment did not "purge [lawyer] of over four months of contemptuous conduct by her

willful noncompliance with th[e] Court's valid Order"); *cf. Taggart*, 587 U.S. at 560 ("[C]ourts

have long imposed civil contempt sanctions to . . . compensate the complainant for losses

stemming from the [contemnor's] noncompliance with an injunction.").

ProScript contends that the Bankruptcy Court erred in finding it in contempt of the First

Contempt Order because that order is defective and therefore ProScript's failure to abide by it

could not have formed the basis of a contempt finding. (*See* ProScript's Br. at 10-15.) That

argument is without merit. "Under the collateral bar doctrine, a party may not challenge a . . .

court's order by violating it." *United States v. Cutler*, 58 F.3d 825, 832 (2d Cir. 1995).

"[P]ersons subject to an injunctive order are expected to obey that decree until it is modified or

reversed, even if they have proper grounds to object to the order." *In re Crim. Contempt Proc.*

*Against Gerald Crawford, Michael Warren*, 329 F.3d 131, 138 (2d Cir. 2003); *see United States*

*v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[A]n order issued by a court with

jurisdiction over the subject matter and the person must be obeyed by the parties until it is

reversed by orderly and proper proceedings.").

"When a party is found in civil contempt, that party can, at least in some circumstances,

overturn the civil contempt judgment by showing that the underlying order that it violated was

invalid." *Worksman v. Century Sports, Inc.*, No. 16-CV-2447, 2018 WL 11451335, at \*4

21

(E.D.N.Y. Aug. 27, 2018) (citing *United Mine Workers of Am.*, 330 U.S. at 294-95 and

*Bethlehem Mines Corp. v. United Mine Workers of Am.*, 476 F.2d 860, 864-67 (3d Cir. 1973)).

"However, to do so, the party found in contempt must have first properly challenged the

underlying order in the [lower] court and properly appealed both the contempt ruling and the

underlying order." *Id.* (citing *Bethlehem Mines Corp.*, 476 F.2d at 864-67); *see Carey v. Air

Cargo Assocs., Inc.*, Nos. M18-302, 09-2353, 2011 WL 446654, at *3 (S.D.N.Y. Feb. 7, 2011)

("[A] party may not ordinarily challenge the validity of an order in a contempt hearing where

that party failed to challenge the order through a motion for reconsideration or appeal.").[7]

It is undisputed that ProScript neither appealed the First Contempt Order nor moved in

the Bankruptcy Court for reconsideration or other appropriate relief. ProScript therefore could

not in opposition to the Second Contempt Motion, and cannot now on appeal from the Second

Contempt Order, argue that the First Contempt Order is invalid. *See In re 477 W. 142nd St.

Hous. Dev. Fund Corp.*, 346 F. Supp. 3d 413, 414 (S.D.N.Y. 2018) (appellant could not

collaterally attack order confirming bankruptcy plan and authorizing sale of property on appeal

of separate order where appellant never appealed initial order); *Worksman*, 2018 WL 11451335,

at *4 (on challenge to contempt ruling, party could not challenge validity of underlying orders

where he never appealed them). ProScript attempts to avoid this conclusion by maintaining that

its challenge to the First Contempt Order is only incidental to its appeal from the Second

Contempt Order. (*See* ProScript's Reply at 1.) But ProScript cannot avoid application of the

---

[7] The only exceptions to this rule are where the order "was transparently invalid or
exceeded the . . . court's jurisdiction." *Cutler*, 58 F.3d at 832. To invoke the "transparently
invalid" exception, the party "must make some good faith effort to seek emergency relief from
the appellate court, or show compelling circumstances, such as a need to act immediately,
excusing the decision to not seek some kind of emergency relief." *Id.* Neither exception applies
here.

collateral bar rule by recasting its obvious challenges to the merits of the First Contempt Order as challenges to the validity of the Second Contempt Order.

In sum, because ProScript did not appeal the First Contempt Order, ProScript cannot rely on the order's alleged invalidity to argue that Judge Paek erred in finding it in contempt of that order. Instead, "[b]y deliberately disobeying the [Bankruptcy Court], [ProScript] attempted to take upon itself the power to determine what is law and, in doing so, subjected itself to civil contempt." *Bethlehem Mines Corp.*, 476 F.2d at 864. Accordingly, the Bankruptcy Court did not abuse its discretion in finding ProScript in contempt of the First Contempt Order.[8]

### 3.    Attorneys' Fees

Finally, ProScript argues that the Bankruptcy Court abused its discretion by not properly scrutinizing the award of attorneys' fees. (*See* ProScript's Br. at 19-20.)

"[A] bankruptcy court's inherent sanctioning authority includes the power to impose civil contempt sanctions in non-nominal amounts to compensate an injured party and coerce future compliance with the court's orders." *In re Markus*, 78 F.4th 554, 570 (2d Cir. 2023); *see In re Lonce*, No. 24-22606, 2025 WL 828829, at *6 (Bankr. S.D.N.Y. Mar. 14, 2025) ("Bankruptcy courts possess inherent discretion to fashion sanctions for civil contempt."). "Where the purpose

---

[8] ProScript also argues that Judge Paek abused his discretion in finding ProScript in contempt of the First Contempt Order because it was objectively reasonable for ProScript to believe that the First Contempt Order was a money judgment that could only be enforced by writ of execution. (*See* ProScript's Br. at 17.) That argument borders on the frivolous. The question on a contempt motion is whether the contemnor had an "objectively reasonable basis" for concluding that its conduct (here, not paying the sanctions set forth in the First Contempt Order) might be lawful. *See Taggart*, 587 U.S. at 557. That ProScript might have reasonably believed that the First Contempt Order could only be enforced by writ of execution has no bearing on whether ProScript's failure to comply with the First Contempt Order in the first place was objectively reasonable. And for the reasons set forth above, it was not objectively reasonable for ProScript to conclude that it had no obligation to pay the sanctions awarded in the First Contempt Order. In short, any uncertainty regarding how the First Contempt Order might be enforced if ProScript defied it does not justify defying it.

of contempt is to compensate the complainant, compensation should be awarded for the actual damages incurred." *In re Johns-Manville Corp.*, 666 B.R. at 488. "Compensatory damages may include attorneys' fees; litigation costs; travel expenses; other actual losses, such as wages or business income; and possibly emotional distress damages." *Id.* Civil contempt sanctions may not be punitive. *See In re Markus*, 78 F.4th at 566.

"An injured party may recover attorneys' fees . . . incurred to research, prepare and prosecute its sanctions motion." *In re Residential Cap., LLC*, 512 B.R. 179, 192 (Bankr. S.D.N.Y. 2014); *see In re Am. Med. Utilization Mgmt. Corp.*, 494 B.R. 626, 637-38 (Bankr. E.D.N.Y. 2013). "The party seeking the sanction must provide the Court with contemporaneous time and expense records that specify, for each attorney, the date, amount of time, and nature of the work performed, and must also show that the fees and expenses were reasonable and necessary." *In re Residential Cap., LLC*, 512 B.R. at 192-93. But "[a] Bankruptcy Court is entitled to exercise discretion in determining the reasonable amount of fees to award." *In re Jackson*, No. 15-21233, 2020 WL 718609, at *4 (Bankr. D. Conn. Feb. 12, 2020).

Here, Judge Paek awarded attorneys' fees in the amount of $3,987.00 based on a time sheet submitted by Debtor's counsel setting forth the dates, time spent, and nature of work performed in prosecuting the Second Contempt Motion. (Second Contempt Order at 15; *see* Bankr. Dkt. No. 28 at 3.) The time sheet detailed 8.6 hours by two attorneys at a rate of $450.00 per hour and 0.6 hours by one legal assistant at a rate of $195.00 per hour. (*See* Bankr. Dkt. No. 28 at 3.) Judge Paek concluded that "the amount of time spent as well as the rate per hour were reasonable given the complexity of the matter and skill of the attorneys." (Second Contempt Order at 15.)

24

Judge Paek's award was not an abuse of discretion. As an initial matter, the hourly rates for the attorneys and legal assistant are consistent with rates found to be reasonable by other courts in this Circuit. *See, e.g.*, *In re D&G Constr. Dean Gonzalez, LLC*, 635 B.R. 232, 242 (Bankr. E.D.N.Y. 2021) ($425 per hour for bankruptcy attorney and $125 per hour for paralegal "consistent with and, in fact, on the lower end of the range charged in this district by attorneys of comparable skill and ability"); *In re Jackson*, 2020 WL 718609, at *4 ($325, $350, and $500 per hour for bankruptcy attorneys "reasonable and commensurate with those rates customarily charged in this District by those who possess similar skills, expertise, and reputation").[9] Moreover, Judge Paek did not abuse his discretion in concluding that the time spent on prosecuting the Second Contempt Motion (9.2 hours total) was reasonable and necessary. Debtor's counsel researched and drafted the motion, reviewed ProScript's opposition, researched and drafted the reply brief, and prepared for and appeared in the Bankruptcy Court for the hearing on February 25, 2025. (*See* Bankr. Dkt. No. 28 at 3.) The briefing dealt in large part

---

[9] ProScript argues that Judge Paek erred in finding the hourly rate reasonable without "a retainer agreement or any evidence of counsel's background and experience." (ProScript's Br. at 20.) Although there is no documentation in the record regarding counsel's background or experience, Judge Paek explicitly determined that the rate was "reasonable given the . . . skill of the attorneys." (Second Contempt Order at 15.) Judge Paek was entitled to draw that conclusion based on his familiarity with counsel's work on the instant case. *See Bernheim v. Damon & Morey, LLP*, No. 06-BK-3386, 2007 WL 1858292, at *2 (2d Cir. June 28, 2007) (bankruptcy court did not abuse its discretion in approving attorneys' fees as reasonable because judge had "presided over this bankruptcy for its duration and had the opportunity to evaluate first-hand both the quality of [counsel's] performance and the contributions made by the firm"); *In re Tribeca Mkt., LLC*, 516 B.R. 254, 274 (S.D.N.Y. 2014) (bankruptcy court did not abuse its discretion in awarding attorneys' fees based on "counsel's performance and contributions throughout the course of the proceedings"). In any event, a Bankruptcy Court is "permitted to use its discretion in evaluating the reasonableness of legal fees in the absence of complete documentation." *Elmasri v. Rupp*, No. 10-CV-2761, 2011 WL 477726, at *5 (E.D.N.Y. Feb. 2, 2011). That Debtor's counsel did not provide documentation of his background does not render Judge Paek's determination that his hourly rate was reasonable an abuse of discretion in light Judge Paek's observation of counsel's performance and the fact the courts have approved similar rates for substantially similar work.

with the unsettled legal question of whether the First Contempt Order is a "money judgment" under Rule 69. (*See* Bankr. Dkt. Nos. 23, 27.) Judge Paek did not abuse his discretion in concluding that it was reasonable for counsel to spend 9.2 hours on those tasks.

Accordingly, the Bankruptcy Court did not abuse its discretion in awarding Debtor $3,987.00 in attorneys' fees.

## IV.    CONCLUSION

For the foregoing reasons, the Bankruptcy Court's March 18, 2025 Order is affirmed. The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Dated:  January 9, 2026
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.